# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Crim. No. CCB-17-106 |
| | * | |
| MARCUS ROOSEVELT TAYLOR | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

In 2018, Marcus Roosevelt Taylor was sentenced to 216 months imprisonment, followed by three years of supervised release, for offenses related to his participation, along with several other members of the Baltimore Police Department ("BPD")'s Gun Trace Task Force (GTTF), in a racketeering conspiracy which involved robbing citizens in the course of the officers' police duties. The matter of restitution in this case remains unresolved, largely due to Taylor's premature appeal to the Fourth Circuit Court of Appeals of the court's August 30, 2019, order granting the government's motion for restitution as to all defendants. (ECF 520). The Fourth Circuit has granted the parties' joint request to remand the case for the purpose of "finalizing and perfecting" the order of restitution. The parties having had the opportunity to brief any outstanding issues as to restitution, the court will now address those issues and finalize the order of restitution as to Taylor. For the reasons stated herein, the court will order restitution in the amount of $228,304.

## BACKGROUND

Taylor was tried before a jury and convicted of three counts related to a racketeering conspiracy and various racketeering offenses, including Hobbs Act robbery, on February 13, 2018. (ECF 342, Jury Verdict). Two substantive acts for which Taylor was found liable are relevant here.[1]

---

[1] As to Shawn Whiting, Taylor was not found to have committed robbery, but he was found liable for conspiracy to commit robbery. (ECF 342, Verdict Sheet at 9). As a co-conspirator, Taylor is subject to restitution in connection with the Whiting robbery under 18 U.S.C. § 3663A. *See United States v. Newsome*, 322 F.3d 328, 341 (4th Cir. 2003) ("[U]nder

1

On January 24, 2014, Taylor and other BPD officers entered the home of Shawn Whiting and stole money, personal property, and contraband from his home. Taylor's co-defendant Maurice Ward testified that he and other officers, including Taylor, planned to rob Whiting while executing a search warrant at his home, and that Taylor found a large sum of money in Whiting's bedroom closet. (JA 101–10, 205–07).[2] Whiting testified that $15,970 was taken from his bedroom closet, $5,500 from his jacket, and $2,500 from his nightstand. He further testified that officers took one Gucci bag, one pair of Gucci shoes, Dolce & Gabbana cologne, one pair of special edition Air Jordan shoes, one pair of white, glow-in-the-dark Nike Airs, two PlayStation controllers, and numerous PlayStation games. (JA 236–39, 251–52, 299).

On March 22, 2016, BPD officers, including Taylor, surrounded the parked car of Oreese Stevenson, apprehended him, learned of his home address, and took from him money, contraband, and his house key. The officers then went to Stevenson's home and broke into a safe in Stevenson's basement from which they stole $200,000. The officers also took a watch valued at about $4,000. Officers Evodio Hendrix, Maurice Ward, and Wayne Jenkins admitted pursuant to their plea agreements in this case that they stole those amounts from Stevenson's house. (ECFs 158, 161, 254). Stevenson corroborated those amounts at Taylor's trial and also testified that the officers stole an additional $40,000 from two bags located in his home. (JA 775–77).

The court held Taylor's sentencing hearing on June 7, 2018, during which the parties and the court agreed to defer the matter of restitution. On June 13, 2018, the court sentenced Taylor to 216 months imprisonment, followed by three years of supervised release, and imposed a $300 criminal assessment. (ECF 416, Judgment). The following day, Taylor filed a notice of appeal on the merits

---

the MVRA, each member of a conspiracy that in turn causes property loss to a victim is responsible for the loss caused by the offense.").

[2] In citing to the trial record, the court refers to the parties' Joint Appendix prepared in connection with Taylor's appeal, which the parties incorporated by reference into their briefing on remand. *See* Case No. 19-7246, ECF 24.

of the conviction. (ECF 426). The Fourth Circuit affirmed the judgment in an order dated November 5, 2019. *See United States v. Taylor*, 942 F.3d 205 (4th Cir. 2019).

Following the appeal, the government submitted a motion for restitution under the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, seeking to repay victims of various robberies committed by the defendants. (ECF 500). As to Taylor, the government argued that the evidence at trial, incorporated into Taylor's presentence report, demonstrated the amount of money taken during the Whiting and Stevenson robberies. (ECF 500 at 3–4). Taylor opposed the motion, arguing (1) that neither Whiting nor Stevenson were victims as defined by the MVRA because the money stolen from them was proceeds from their illegal drug activities and (2) that the government had failed to adequately prove the amount of restitution requested. (ECF 506). On reply, the government contended that victim status under the MVRA is not dependent on whether property taken is derived from lawful activity. (ECF 513). On Friday, August 30, 2019, the court granted the government's motion for restitution, finding that the motion was unopposed except by Taylor and one of his co-defendants, Maurice Ward, and that "the restitution requested is well supported by the facts in Ward's plea agreement and the jury verdict as to Taylor." (ECF 520). The court further ordered that Amended Judgments would issue. (*Id.*). Three days later, on Monday September 2, 2019, a court holiday in observance of Labor Day, Taylor filed a notice of appeal as to the restitution order. (ECF 521). At this point, the court had not had an opportunity to finalize the order of restitution as to any of the defendants nor to issue Amended Judgments.

After Taylor filed an opening brief in the Fourth Circuit, the parties agreed that the notice of appeal had been prematurely filed and filed a consent motion requesting that the Fourth Circuit remand the case for the order of restitution to be "perfected and finalized" and to stay the briefing on appeal. *See* Case No. 19-7246, ECF 23. The Fourth Circuit granted the motion on August 12, 2020. (ECF 578). On remand, the court granted the parties' request for supplemental briefing to allow the

parties to resolve any outstanding issues as to restitution. (ECF 587). Taylor has filed a memorandum opposing the imposition of restitution which incorporates by reference the arguments he made in his opening brief to the Fourth Circuit, the government has filed an amended motion for restitution which presents arguments modifying its earlier request and responds to Taylor's arguments, and Taylor has replied. (ECF 597, 629, 637).

**DISCUSSION**

The MVRA requires that restitution be paid for certain offenses against property in which an identifiable victim or victims have suffered a physical injury or pecuniary loss. 18 U.S.C. § 3663A(c)(1). The statute defines a "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern. . . . " *Id.* § 3663A(a)(2). Restitution under MVRA is mandatory—if the defendant has committed a covered offense and caused physical injury or pecuniary loss to a victim, the court is required to order full restitution irrespective of an individual's ability to pay. *See id.* §§ 3663A(a)(1), (c), 3664(f)(1)(A); *United States v. Ritchie*, 858 F.3d 201, 207, 216 (4th Cir. 2017). When restitution is ordered under the MVRA, the court must follow the procedures for calculating and ordering restitution set forth in 18 U.S.C. § 3664. *See* 18 U.S.C. § 3663A(d).

Taylor objects to MVRA restitution in this case on three bases. First, he argues that the court's earlier order of restitution failed to make a record sufficient to comply with the procedural requirements of 18 U.S.C. § 3664. Second, he repeats his argument that Whiting and Stevenson are not entitled to restitution because they may have obtained property taken during the robberies through illegal drug activities. Third, Taylor contends that there is insufficient evidence to support the amount of restitution the government seeks. The court addresses each argument in turn.

4

## I. Requirements of 18 U.S.C. § 3664

18 U.S.C. § 3664 includes a number of procedural requirements for orders of restitution. As relevant here, before issuing an order of restitution, the court must "order the probation officer to obtain and include in its presentence report . . . information sufficient for the court to exercise its discretion in fashioning a restitution order." *Id*. § 3664(a); *see also* Fed. R. Crim. P. 32(c)(1)(B) ("If the law permits restitution, the probation officer must conduct an investigation and submit a report that contains sufficient information for the court to order restitution."). "[T]o the extent practicable" the report must include "a complete accounting of the losses to each victim . . . and information relating to the economic circumstances of each defendant." § 3664(a). The defendant themself is responsible for preparing and filing with the probation officer "an affidavit fully describing the financial resources of the defendant" in service of preparing the presentence report. *Id.* § 3664(d)(3).

Upon the determination of the amount of restitution owed to each victim, the court must specify in the restitution order "the manner in which, and the schedule according to which, the restitution is to be paid" and in doing so must consider "(A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled; (B) projected earnings and other income of the defendant; and (C) any financial obligations of the defendant; including obligations to dependents." *Id.* § 3664(f)(2). The court must make factual findings "keying the payment schedule to these factors and demonstrating the feasibility of the schedule." *United States v. Leftwich*, 628 F.3d 665, 668 (4th Cir. 2010) (citing *United States v. Dawkins*, 202 F.3d 711, 717 (4th Cir. 2000)).

Taylor argues that the probation officer "made no investigation or analysis of the actual losses to any of the victims; made no recommendation to the court on the amount of restitution that should be made; and made no attempt to relate to the court [his] economic circumstances." (ECF 597-1 at 12). He further argues that the court failed to make the findings required by § 3664(f)(2).

As to the latter argument, it is premature. The court's August 30, 2019, Order did not finalize orders of restitution for any of the defendants in this case. Amended Judgments, which would contain the final amount of restitution to be paid to each victim and the payment schedules contemplated by § 3664(f), have not issued, and the court had no opportunity to do so or to make § 3664(f)(2) findings in support of the payment schedule before Taylor filed his notice of appeal on September 2, 2019. The court will make these findings as to Taylor in this Memorandum, below.

As to Taylor's argument that the probation officer's report was deficient in this case, the court disagrees. The court ordered the probation officer to prepare a presentence report in this case (ECF 345), and the resulting report (ECF 370) contains "information sufficient for the court to exercise its discretion in fashioning a restitution order," including an accounting of losses to Whiting and Stevenson, and information related to Taylor's economic circumstances. 18 U.S.C. §3664(a). The presentence report contains a detailed accounting of Taylor's assets, liabilities, net worth, monthly income, monthly expenses, and monthly cashflow. (ECF 370 ¶ 95). Much of this information came from Taylor's own submissions to the probation office. (*Id.* ["The defendant submitted a financial statement[.]]). *See also* 18 U.S.C. § 3664(d)(3). The report also includes a lengthy summary of the government's evidence at trial, including evidence regarding the Whiting and Stevenson robberies and the losses Whiting and Stevenson sustained. (ECF 370 ¶¶ 8–10, 21–25). The statute does not require the probation office to recommend to the court the amount of restitution that should be made; rather "the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court[.]" 18 U.S.C. § 3664(f)(1)(A). Nor is the presentence report the sole record the court may consider in making findings as to the amount of restitution or the factors listed in 18 U.S.C. § 3664(f)(2). *See Dawkins*, 202 F.3d at 717 (court may comply with requirements of § 3664 by "announcing its findings on the record or by adopting adequate proposed findings contained within a presentence report") (internal quotation marks omitted).

## II. Whiting's and Stevenson's Status as Victims Under 18 U.S.C. § 3663A

Taylor does not dispute that the offenses for which he was convicted are covered by the MVRA or claim that he was not involved in the robberies of Whiting and Stevenson; rather, he contends that Whiting and Stevenson are not victims under the MVRA because there was evidence presented at trial that both individuals were selling drugs at the time of the robberies. Taylor assumes from this evidence that the amounts stolen from Whiting and Stevenson were proceeds from illegal drug activities. Much of Taylor's argument boils down to a policy concern that restitution in his case will reward individuals who are alleged to have amassed some of their property by way of illegal conduct. But Taylor attempts to ground his argument in law in two ways. First, Taylor alleges, because the amounts taken were derived from an unlawful source, Stevenson and Whiting could not be harmed by the robberies. *See* 18 U.S.C. § 3663A(a)(2) (defining "victim" as "a person directly and proximately harmed as a result of the commission of an offense . . . "). Alternatively, Taylor claims that Whiting and Stevenson have no right to restitution because proceeds from any of their illegal drug activities would have been subject to forfeiture under 21 U.S.C. § 853 had they been convicted of possession with intent to distribute a controlled substance, and they would have had no right to those proceeds.

These arguments do not persuade the court to alter its prior conclusion that Whiting and Stevenson are victims due restitution under the MVRA, for two reasons.

First, the plain text of the definition of "victim" under the MVRA does not limit restitution based on the conduct of the person who experienced pecuniary loss. Victim status is determined solely by whether a person was "directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered[.]" 18 U.S.C. § 3663A(a)(2). And while no circuit court appears to have directly addressed the question whether a defendant's conduct may be said to not have proximately harmed the person who experienced a loss because of the person's own alleged unlawful

activity, courts routinely uphold awards of restitution to victims alleged to have participated in unlawful conduct other than the offense of conviction. *See, e.g.*, *United States v. Bonetti*, 277 F.3d 441, 453 (4th Cir. 2002) (woman who had entered the United States unlawfully was entitled to restitution, including lost wages, following the defendant's conviction for illegally harboring her); *United States v. White*, 552 F. App'x 317, 322 (5th Cir. 2014) (upholding order of restitution where defendant found guilty of Hobbs Act robbery of a drug dealer); *United States v. Ojeikere*, 545 F.3d 220, 222–23 (2d Cir. 2008) (upholding restitution to victims of defendant's wire fraud scheme where the defendant alleged that the victims themselves had committed fraud by agreeing to participate in what he sold to them as a scheme to unlawfully obtain money from Nigeria because the victims "were *not* involved in the *offense of conviction*"); *cf. Scanlon v. Greenberg Traurig, LLP*, 778 F. Supp. 2d 56, 59–60 (D.D.C. 2011) (defendant's allegations of a third party's uncharged criminal conduct insufficient to preclude the party's entitlement to restitution under § 3664(j)).

Second, courts that have limited a victim's restitution based on their victim's conduct have done so in two types of circumstances not present here. First, a number of courts have recognized a "coconspirator exception" to the MVRA's broad definition of a victim to preclude the award of restitution to persons who were participants in the offense of conviction and shared the defendant's criminal intent. See *United States v. Reifler*, 446 F.3d 65, 127 (2d Cir. 2006); *United States v. Lazarenko*, 624 F.3d 1247, 1252 (9th Cir. 2010), as amended on denial of reh'g (Dec. 2, 2010); *United States v. Lazar*, 770 F. Supp. 2d 447, 451–52 (D. Mass. 2011). Clearly, neither Whiting nor Stevenson participated in this racketeering conspiracy. Second, at least one district court has declined to award restitution where, unlike in this case, there was a legal determination in a separate proceeding that the victim was not lawfully entitled to the loss sustained. In *United States v. Martinez*, 978 F. Supp. 1442 (D.N.M. 1997), the court refused to require the defendant to pay restitution to the casino she had robbed because the casino had been found, through extensive litigation, to be operating in violation

8

of the federal Indian Gaming Regulator Act. *Id.* at 1448–49, 1453 & n.9. But here, neither Whiting nor Stevenson were facing criminal charges related to controlled substances or the searches conducted by the GTTF at the time of trial.[3] For Stevenson in particular, the record is not clear that the money and personal items taken from him were obtained through illegal activity. Stevenson maintained both lawful and unlawful sources of income—in addition to selling drugs, Stevenson had been a truck driver since 2012 and he and his wife operated a small business (JA 762, 773–74)—and he provided no testimony that the amount taken during the robbery was related to illegal activity. As for Whiting, he too maintained a lawful source of income, and though he testified that the money taken from his bedroom closet was earned "selling drugs" (JA 237), that amount has not been linked to any standing conviction. For similar reasons, Taylor's reference to the forfeiture of property derived from violations of federal controlled substance laws, *see* 21 U.S.C. § 853, is irrelevant. Neither Whiting nor Stevenson were convicted of a federal controlled substance offense for the conduct they testified to during Taylor's trial.

The court is certainly mindful of Taylor's policy argument that the MVRA should not be used to reward individuals for their ill-gotten gains. "Courts must be concerned about the propriety of using the court's considerable power to assist someone in recovering a loss." *Martinez*, 978 F. Supp. at 1454. Where the property taken from the victim plainly was derived, as it was in *Martinez*, from conduct determined by a court to be unlawful, although the MVRA does not explicitly limit the definition of a victim on that basis, it may be appropriate to deny restitution. Where the record is less clear as to the source of the victim's property, however, the court must balance the policy consideration Taylor has raised with the clear statutory mandate to award restitution in the "full amount" of the victim's loss in order to both compensate the victim and "to ensure that the offender

---

[3] Whiting previously faced state charges related to his arrest by BPD during the January 24, 2014, robbery and was convicted. That conviction had been vacated by the time of trial. (JA 271–72). Stevenson was arrested during the March 22, 2016, robbery and charged with controlled substance offenses; those charges were dismissed. (*Id.* 763).

9

realizes the damage caused by the offense and pays the debt owed to the victim as well as to society." *United States v. Newsome*, 322 F.3d 328, 340 (4th Cir. 2003) (quoting S. Rep. No. 104-179, 1996 U.S.C.C.A.N. 924, 931). This dual restorative and penal purpose is not served by engaging in an exhaustive fact-finding mission into the victim's background, history, and source of income. *See id.* (quoting S. Rep. No. 104-179, 1996 U.S.C.C.A.N. 925) ("The MVRA was enacted with the purpose that 'courts order full restitution to all identifiable victims of covered offenses, while guaranteeing that the sentencing phase of criminal trials do not become fora for the determination of facts and issues better suited to civil proceedings.'"). To do so would negate Congress's intent that restitution under the MVRA is *mandatory* and would create the impression that the consequences of a criminal act against a person who allegedly has engaged in unlawful conduct should be less serious simply because of the victim's status.

In sum, Taylor's policy concerns do not negate that Whiting and Stevenson are victims within the definition of the MVRA nor do they override Congress's mandate that the court order restitution in the full amount of the victims' losses. As neither victim was involved in the offense of conviction, their unproven and unadjudicated illegal conduct is immaterial to their status as victims.

### III. Factual Findings Regarding Amount of Restitution and Payment Plan

#### a. Amount of Restitution

The proper amount of restitution under the MVRA is the full amount of each victim's loss. The amount must be based on sufficient evidence of the "actual loss", not the "intended loss", *see United States v. Harvey*, 532 F.3d 326, 339 (4th Cir. 2008), and is not measured by the defendant's gain, *id.* at 340–41. The court has considerable discretion in determining how to value lost property, but that discretion must be guided by the "primary purpose of the MVRA . . . to ensure that victims are made whole[.]" *United States v. Steele*, 897 F.3d 606, 610–11 (4th Cir. 2018). In order to prevent a potential "bailout" to the defendant or a "windfall" to the victim, fungible goods should be valued

for the purpose of awarding restitution according to their fair market value. *Id.* at 611–12. But "[s]o long as [a] basis for reasonable approximation is at hand, difficulties in achieving exact measurements will not preclude a trial court from ordering restitution." *United States v. Wagner*, 280 F. Supp. 3d 811, 815–16 (E.D. Va. 2017) (quoting *United States v. Mejia*, 326 F. App'x 710, 712 (4th Cir. 2009)). The government bears "[t]he burden of demonstrating the amount of the loss sustained by a victim as a result of the offense[.]" 18 U.S.C. § 3664(e). "Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence." *Id.*; *see also United States v. Seignious*, 757 F.3d 155, 163 (4th Cir. 2014).

The government requests in its amended motion that the court order restitution in the amount of $269,801.08, a figure which includes the $240,000 Stevenson alleges was taken from his home, the $4,000 watch stolen from Stevenson, the $23,970 in cash taken from Whiting's home, and personal property taken from Whiting, which the government values at $1,831.08.

Whiting's testimony as to the amount in cash taken from his home and his declaration corroborating that testimony, attached to the government's amended motion, are sufficient to support an award of restitution to him in the amount of $23,970. Taylor's attempts to undermine this testimony are unpersuasive. Taylor argues Whiting testified that only $16,230 was taken. Not so. Whiting referenced that figure in stating what officers left unreported to other law enforcement officials. (JA 259–60). Taylor's Presentence Report also details only the amount the officers kept, and not Whiting's total loss. (ECF 370 ¶ 8). That the officers may have turned over some of the money stolen from Whiting's house to law enforcement does not decrease Whiting's loss. Under the MVRA, "each member of a conspiracy that . . . causes property loss to a victim is responsible for the loss caused *by the offense*." *Newsome*, 322 F.3d at 341. Actual loss is not to be measured by the defendant's gain. *Harvey*, 532 F.3d at 340–41. Here, the racketeering conspiracy involved the use of the officer's apparent legal authority to commit armed robberies of Baltimore residents. Maurice Ward testified

that he drafted a search warrant (of unclear validity) for Whiting's residence with the knowledge and intent that he, Taylor, and others would use the search warrant in order to rob Whiting of any money they found. (JA 205–07). In this way, Whiting's entire pecuniary loss of $23,970 was directly caused by the unlawful conspiracy. As to the personal property, Whiting's declaration estimates the fair market value of only two items, the white Nikes and the special edition Air Jordans, citing a recent online listing for each product for $105 and $229, respectively. (ECF 629-1 at 2–4). He testified that each pair of shoes was brand new when stolen. (JA 251–52). The court will therefore award restitution in the amount of $229 for the Air Jordans and $105 for the white Nikes. As for the remainder of the items, the court is unable to estimate their fair market value from the proffered evidence of their purchase price. Accordingly, the court will award $24,304 in restitution to Whiting.

As for Stevenson, the record firmly supports restitution in the amount of $204,000. Stevenson testified to the amount in cash stolen from his safe and the fair market value of the watch, and his testimony is amply corroborated by the plea agreements of Ward, Hendrix, and Jenkins. Taylor cites the trial testimony of Hendrix and Ward in which they report a lesser amount in Stevenson's safe, but that testimony appears to relate to the amount the officers temporarily put *back* into the safe in order to record video footage of officers finding a lesser amount that they would then report to the department. (JA 346). As previously explained, a defendant's gain is not an appropriate proxy for the amount of loss actually caused by the offense, and Stevenson's entire proven loss was directly caused by the officers' conspiracy. The record is less clear that an additional $40,000 was stolen by the defendants. Accordingly, the court will award $204,000 in restitution to Stevenson.

In sum, the record supports $228,304 in losses and the court will order Taylor to pay that amount in restitution. The court has also imposed restitution for the Stevenson robbery against Hendrix, Jenkins, and Ward. Hendrix, Jenkins, Ward, and Taylor will be jointly and severally liable for the $204,000 taken from Stevenson. *See* 18 U.S.C. § 3664(h).

### b. Payment Schedule, Interest, and Amended J&C

The government requests that the court order that restitution be due in full immediately, with interest to apply, and that the court schedule monthly payments in the amount of $100. In setting Taylor's payment schedule, the court considers his financial resources and assets, his projected earnings and other income, and any financial obligations he has. 18 U.S.C. § 3664(f)(2); *Leftwich*, 628 F.3d at 668. Taylor's most recent employment was as an officer with the BPD. In that position he earned $8,333.33 per month, with overtime. (ECF 370 ¶ 95). This income, less his monthly expenses, left him with a monthly cash flow of $3,324, but Taylor also appears to have been in debt at the time of sentencing. (*Id.*). Taylor's projected earnings and income upon release are very difficult to predict, given that law enforcement had been his career for approximately ten years at the time he was sentenced, a career to which he almost certainly will not be able to return. Based on his level of education, a high school diploma with some college coursework, (*see id.*, ¶ 89–90), the court believes it is unlikely Taylor will, at least in the short term, earn close to his prior salary. Taylor's financial resources appear to be greatly diminished at this time, but perhaps not permanently so. Accordingly, the court will order that the restitution is due in full immediately, but will waive interest, and will impose a nominal payment schedule of $100 per month during the term of supervision if the entire amount of restitution is not paid prior to the commencement of supervision. *See* 18 U.S.C. §§ 3572(d), 3612(f)(3)(A), 3664(f)(3)(B). The Probation Officer also will be authorized to recommend to the court an adjustment in the monthly payment schedule depending on Taylor's financial circumstances during supervision. *See Dawkins*, 202 F.3d at 716, n.2; 18 U.S.C. § 3664(f)(3)(B).

## CONCLUSION

For the foregoing reasons, the government's amended motion for restitution (ECF 629) will be granted in part and denied in part. The court will order Taylor to pay restitution in the amount of $228,304—$24,304 to Shawn Whiting and $204,000 to Oreese Stevenson. Taylor will be jointly and

severally liable with Evodio Hendrix, Wayne Jenkins, and Maurice Ward for the $204,000 owed to Oreese Stevenson. Restitution will be due in full immediately, interest will be waived, and the court will impose a nominal payment schedule of $100 per month during the term of supervision if the entire amount of restitution is not paid prior to the commencement of supervision.

    A separate Order follows. An Amended Judgment will issue. Prior to the entry of the Amended Judgment, the government shall, within five business days of the court's order, file on the docket, under seal, the victims' names, addresses, and restitution amounts owed, consistent with this opinion, which will be included in the sealed Statement of Reasons accompanying the Amended Judgment.

|   |   |
|---|---|
| __7/12/2021__ | __/S/_____ |
| Date | Catherine C. Blake |
|   | United States District Judge |